Good morning, your honors. May it please the court, my name is David Landry and I represent the petitioner Marcelo Martinez-Cedillo. The petitioner became a permanent resident in 2005. In 2008, he pled guilty to violating California Penal Code 273AA. And at the time that he pled, he indicated on his plea agreement that he drove a vehicle with a child not having a seat belt in the car. Counsel, do we know whether Mr. Martinez-Cedillo was advised by counsel at the time about the immigration consequences? Well, your honor, he had a legal representative and we're going to work off the presumption. I didn't handle the case. But the record doesn't reflect that he was or wasn't. There was no, we don't have evidence of any colloquy in which the judge says, have you been advised of any potential immigration consequences? I don't know, your honor. We didn't, that didn't become an issue in the case, so I can't tell you. But I would note, your honor, that at the time that the petitioner pled guilty, the board had spoken to this issue in a case called Velazquez-Herrera. And in that case, the board said, the board indicated that if the criminal act did not result in harm to the child, then it wasn't child abuse. Now, the board subsequently, in matter of SORAM, which came down in 2010, and later said that no, we're going to clarify the underlying proceedings and say that no, there are circumstances where if the child is not. Counsel, where does the BIA say that in Velazquez v. Herrera? Well, your honor, in Velazquez-Herrera, the wording of it creates the indication that it would require harm. And in fact, the Ninth Circuit in a case called Fregoso, which came down in 2009. Well, I ask you a very specific question about where in Velazquez in the BIA's decision does it say that the definition requires harm to a child, physical or mental harm to a child? Velazquez? Wait. Velazquez, yes. Yeah, the BIA's decision. The 2008 BIA decision. Correct, your honor. And I'm familiar with the decision, although I don't have it right in front of me to scan through it. It looks to me like the critical paragraph the BIA says that we're going to interpret the term crime of child abuse broadly to mean any offense involving intentional, knowing, reckless, criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation. At a minimum, this definition encompasses convictions for offenses involving infliction of a child of physical harm. Didn't say it was limited to that. Well, your honor, I certainly understand your perspective on it. The Ninth Circuit in Fregoso said that, no, that's not the way that they interpreted that decision. They interpreted it to mean, to indicate that harm would be required. And the BIA later clarified that and said, no, that Ninth Circuit wasn't correct on that. You are correct, your honor. But our position would be that when the Petitioner accepted the guilty plea in 2008, he was working on what was a reasonable interpretation of Velazquez-Herrera. And, in fact, it wasn't just his interpretation. It was an interpretation the Ninth Circuit had later on, a year later. So from the Petitioner's perspective, when he entered into this guilty plea, he did so under the belief that what he was agreeing to did not accomplish. Okay. Counsel, does the application of the Montgomery Ward factors require a case-by-case analysis or some kind of categorical judgment that anything occurring prior to 2008 or prior to 2010 is categorically sort of exempt from the BIA's interpretations? So are we supposed to look at the nature of the harm to your client or to the nature of the harm to all clients that pled guilty at any time before, let's say, 2008 or 2010? Well, I think it would only be fair that we hold a person that's entering into a plea agreement that they be allowed to plea according to the law as reasonably interpreted at that time. I mean, it sort of — it wouldn't be fair to the Petitioner or to other similarly situated aliens that entered into this guilty plea under the reasonable belief that what they were doing was not going to place them into removal proceedings. Right. And my question is, do we decide that categorically, or do we actually get to inquire as to what the lawyer told, what your client was told, what the judge said? I don't think it's fair to go all the way into whether or not the attorney — we get into these inquiry things because — Can we have a Supreme Court case on point on that, that if — that there is a presumption that he was advised according to the law at the time? Yes, Your Honor. I know there's one. I don't have it at my fingertips, but — Right. And I don't either. But what you're — that would suggest, then, Your Honor, we're going to open up privileged conversations that the court should have talked about. Well, it's not just that. It's that — I mean, I think the Supreme Court has said that you — you plea — when you plea, it probably isn't even a case that would be cited necessarily here, sort of a general presumption that when you enter a plea of guilty, you're entering consistent with the law as it exists at the time. I would agree, Your Honor. And I think that's only fair. Maybe you should have cited a case on that. Sorry. Your Honor. Does that answer your question, Your Honor? Yeah. Although I'm curious. In Garfias, didn't we — didn't we examine Garfias's individual circumstances? Your Honor, I'm not in a position to argue that point. I apologize. So your client pled in 2008. Correct. So is he bound by the BIA's holding in Velazquez? Does he get the benefit of Fregoso, which is decided a year later? No. I think he relied upon Velazquez, and I think Velazquez — a reasonable interpretation of Velazquez at that time would have said that harm — now, I certainly understand the government's position that, hey, afterwards, Saram clarified it. But I don't think this Petitioner should be subject to that analysis, the Saram analysis, because a reasonable interpretation of what Velazquez-Herrera said was that harm would be required. But you get that out of Fregoso. Well, I think that you get that out of a reasonable reading of Velazquez. Yeah, but why would that be — why does that work to the benefit of your client if your client pled when Velazquez was the only thing on the record? Because a reasonable interpretation of Velazquez-Herrera was — But the BIA disagreed with us in 2010, so why wouldn't we apply what the BIA said it meant in 2008? Because that's after the fact. That's well after the fact. But Fregoso is after the fact. You want the benefit of Fregoso, which is after the fact, but you don't want to be burdened by Saram, which is after the fact. I'm not suggesting to the Court that the Petitioner is subject to Fregoso either. What I'm suggesting — what I'm arguing to the Court is that when the Petitioner made the decision to plead guilty, the outstand — the standard of the law was what Velazquez-Herrera said, and a reasonable interpretation of that at that time was that it would have required physical abuse. I think common wording when you're talking about child abuse, most people don't think of child abuse as failing to put your child in a seat belt. It requires a volitional act. Counsel, doesn't the statute also refer to child neglect? It does. So why isn't this child neglect? Well, one wasn't pled as child neglect, but as it — when I think of child neglect, I think of failing to feed a child, failing to put proper clothing on a child, that type of thing. And what about child endangerment? Well, I don't think child endangerment reaches the level of child abuse. And part of the problem, although I'm about to run out of time, Your Honor, the Board in a subsequent case, Mendoza-Osorio, says that now the standard is a sufficiently high risk of harm. Well, that's another slippery slope. It's another ambiguous statement trying to define an ambiguous wording of child abuse or child neglect. I think the Ibarra case in the Tenth Circuit does a much better job. They look at what the legislative intent was. They look at what the laws were in 1996 when this law was created, where the vast majority of the states said no, a negligent act where no harm is involved, that is not child abuse. And I think that's what most people, when they walk around the streets of the United States, think, that that's not child abuse. Failing to put your kid in a seatbelt, where when I was growing up, we didn't even have seatbelts. And were my parents committing child abuse all of those years? I don't think so. I think we've since learned that, yes, it's probably safer to keep a child. It wasn't just putting him in a, in a, without a seatbelt. It was also driving drunk, right? Well, the statute, what he, what he agreed to plead to was in 273AA, and that was failing to put the child in a seatbelt. Now, there were also convictions for driving under the influence. But in California, you can keep in mind that a DUI can be done simply by being in a parked car on the side of the road. You don't have to actually be driving the vehicle. So once again, we get into this slippery slope of what is child abuse. And, Your Honors, I have to submit. My time is up. Mr. Landry, I've taken a lot of your time. So I'm going to afford you at least a minute on those. Oh, thank you. I appreciate that. Thank you, Mr. Landry. We'll hear from the government. Ms. Cohen. May it please the Court. Breanne Whelan-Cohen on behalf of the United States Attorney General. I'd like to start clarifying the definition of Velazquez-Herrera and whether or not the BIA requires results in harm be covered by the statute. And nothing in Velazquez-Herrera excludes statutes that do not require harm or result in injury to the child from the Board's generic definition. And nothing in it expressly includes it. That's correct. So it was reasonably interpreted later by our circuit to say no, it required harm. Not that Martinez necessarily can rely on Fregoso as the relevant interpretation of the law at that time, but it's certainly persuasive evidence that that's how people, including the Ninth Circuit, reasonably interpreted Velazquez. Well, first, subsequent to Velazquez, there was a clarification by the Board, and so the Board clarified. You're talking about Sorum? Yes, that's correct. Okay, that was after he pled guilty. And if we look first at this Court's decision in Fregoso, this Court actually distinguished the felony provision at issue here, 273A of subsection A, from the misdemeanor provision there, subsection B, because of the level of harm. The statute in this case requires willful conduct under conditions likely to cause serious bodily harm or the death of a child. Therefore, the level of risk of harm fits under the Board's generic definition, arguably even before a matter of Sorum clarified that no result in injury is required. Because the risk of harm is so great, that constitutes maltreatment of a child or conduct through an act or omission that impairs it. I have a slightly different concern that's been raised by the Supreme Court recently, which is the amount of deference that you accord any of the Board's decisions in this area. The Board here, in a series of precedential decisions, keeps changing. You start with Rodriguez, Rodriguez, and that required cruelty. And then you get to Velazquez. It required harm. Then you get to Sorum, and it doesn't require harm. And I think there's a new wrinkle on it now, too. There's a later case where they're changing again. And the Supreme Court has recently said that we don't necessarily give deference to decisions when the agency keeps changing its position without explanation. So I will exclude Rodriguez, Rodriguez from the definition of child abuse because that was a case defining sexual abuse of a minor. And this Court has even noted that the discussion of child abuse in that case was dicta. As for Velazquez, Herrera, and Sorum, they are consistent. I think they're contradictory. One requires harm, one doesn't. Respectfully, Velazquez-Herrera did not exclude harm. And while I understand Your Honor's point that it didn't include harm, it left that question open. And so Sorum is a clarification that it did not. And the idea behind Chevron and when Congress leaves a gap in an ambiguous statute for the agency to fill, that that reflects the importance of agencies to make those policy judgments. But they have to be reasonable. And how is it reasonable if the agency keeps changing it? First, I would argue that there's not so much change. It's been a consistent definition and clarifications throughout. But second, I would also note that the agency is there to reflect important policy goals. And in matter of Sorum, the board actually explained, and I believe also in Velazquez-Herrera, that in 1996 at the time that child abuse was added as a removability ground, the trend of the states was to include things like child endangerment. I think Ibarra points out that what was the trend that the agency was looking at was in civil law, not in criminal law. Ibarra makes the point that in Velazquez-Herrera there was a reliance in criminal law, but they also did look at some states' statutes. Is that reasonable to define a generic crime by looking at civil law? Yes, because here it's an interpretation of the INA. And so cases like Taylor, where we're looking at the majority of the states, are different from the type of analysis here because the board can look. There's nothing by the Supreme Court or this court that restricts the board to looking at state criminal law. And what the board was trying to get at was what is the common understanding of the term child abuse. So looking at both civil and criminal law is permissible to determine the ordinary contemporary meaning of that term. So let me understand what you're saying. You're saying they were looking at the generic crime of child abuse. They weren't defining it. They weren't interpreting a term in the INA. They were looking at the generic crime. They were defining the term in the INA, crime of child abuse, by looking at a generic definition. That's correct. Right. Why does the board have any more expertise at determining what a generic crime is than we do? Well, it may not be expertise, but allowing the board to give that. But that's what Chevron Deference is based on, is expertise. It's also based on important policymaking goals of the agency and that the agency is better equipped to make those policy goals than the federal courts. I'm pulling that from Chevron and I believe also Brandeis, that the agency is in the best decision to make those policy goals as to what Congress meant by those terms. When Congress drafts an ambiguous statute, it is giving Congress an express delegation of authority to fill those statutory gaps. All right. Well, maybe we don't even need to reach all these issues in this case because, in this case, the state of the law when Martinez pled guilty was Velazquez. And to the extent he relied on that, shouldn't he be entitled to rely on that state of the law? I would first point out that even under Velazquez, his conviction, because it was the felony provision, fits the board's definition at the time. And second, because Velazquez was not a change in the law, the retroactive analysis is different. There, it is the board filling an agency gap, and so unlike cases like Garfias or Limas, where this court found that there was a change in the law,  and so the retroactive effect... No, no, wait. Rodriguez-Rodriguez was the first. Rodriguez-Rodriguez was defining sexual abuse of a minor and used the term, examined the term child abuse in construing sexual abuse of a minor, but many courts have noted that that was dicta because the question presented was not crimes of child abuse at 1227A2E but rather sexual abuse of a minor, which is a separate removability ground. So Rodriguez-Rodriguez was not purporting to define child abuse as used at 1227A2E, whereas Velazquez-Herrera explicitly addressed that removability ground. Counsel, I'd like to ask you the same question I asked Mr. Landry. When we look at the retroactivity analysis and the Montgomery Ward factors, are we looking at a case-by-case basis, or are we doing this sort of categorically? Saying everybody who pled guilty prior to 2008 has one standard, everybody who pled after Velazquez in 2008 has a different standard, something different after Sorum in 2010. What's the government's position? So in Garfiez, Rodriguez, and subsequent cases, this Court made clear that they apply the Montgomery Ward factors in a case-by-case basis. However, the government's position is that this case falls slightly before Montgomery Ward factors because, again, Velazquez-Herrera is the first pronouncement where the Board was filling the statutory gap, and so the presumption of retroactivity should apply, and the Court should only find retroactive application if it's excessively unfair or unwarranted. However, if the Court decides to move on to the Montgomery Ward factors, the government's position is that they tilt in favor of the government, given the lack of reliance on prior law and the important goals in making individuals who pray or maltreat, mistreat children removable from the United States. If there are no further questions? Actually, I guess I should also just quickly address the denial of continuance, although it has not come up. The agency did not abuse its discretion in denying the continuance here, given that DHS opposed the request, it was untimely, and given the serious criminal nature and history of this case. If there are no further questions, we ask that you deny the petition for review. Thank you, Ms. Cohen. Mr. Landry? As to the last point on the I-130, the Board in its last decisions didn't actually decide on whether or not the petitioner could recapture his 1995 priority date. That priority date was March of 1995. It is now current under the Visa Bulletin. So technically, if he can recapture his 1995 priority date, he is now eligible to immigrate. And I would note that the Board made a decision that we're not going to grant the continuance because the Board found that it was not likely for him to be granted the waiver. However, the Board didn't consider any of the factors that the Board, that the law considers in making those waivers. And in particular, it's hardship to the petitioner's U.S. citizen father and permanent resident mother, who are both advanced agents. So what are you asking, if we agree with you, what are you asking for us to do now? Well, I think that in light of that circumstance, remand would be proper to the Board, let the Board make the decision on whether or not the petitioner can recapture his 1995 priority date. Let me ask you one more thing. What is his status? He's not been deported? No, he's physically in the United States. Physically, not detained? Not detained. He was in my office two weeks ago. He has work authorization. What does that mean, green card? No, work authorization. Work authorization. He has the ability to continue to be employed. What does that mean, what particular work document? The form is an I-765. We call it an EAD. In other words, he has the legal right to work. He's working. He's staying out of trouble, living with his kids, that type of thing. That I'll submit. Okay. Thank you, Mr. Landry. We thank both counsel for the argument. Martinez-Cedillo v. Sessions is ordered submitted.
judges: Wardlaw, Bybee, Illston